IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MICHAEL KIRTPATRICK, f/k/a
ERIC AICHER,

    Petitioner,

v.                                                                                                  Civ. No. 22-945 WJ/KK

WARDEN HATCH,

    Respondent.

**MAGISTRATE JUDGE'S PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION**

Before the Court is the Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 (Doc. 1) ("Petition") filed by Petitioner Michael Kirtpatrick, formerly known as Eric Aicher.[1] By an Order of Reference, Chief United States District Judge William P. Johnson referred this matter to me to conduct hearings as warranted, and to perform any legal analysis required to recommend an ultimate disposition of the case. (Doc. 10.) Having considered the parties' submissions, the record, and the relevant law, I recommend that the Court deny Mr. Kirtpatrick's claims and dismiss this case with prejudice.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Mr. Kirtpatrick is an inmate in the custody of the New Mexico Corrections Department ("NMCD"). *See* New Mexico Offender Search, https://cd.nm.gov/offender-search/ (last accessed Aug. 9, 2024). On November 23, 2020, NMCD employee Deborah Garcia wrote a misconduct report charging Mr. Kirtpatrick with "A(40) Sexual Harassment," at "15:27" on November 2, 2020, in "E unit." (Doc. 7-1 at 322.) The report contains the following explanation of the charge:

---

[1] Petitioner originally filed his Petition under the name "Eric Aicher," but on October 20, 2023, he obtained a court order legally changing his name to "Michael Colin Keith Kirtpatrick." (Doc. 1 at 1; Doc. 15 at 3.)

> Based on the conclusion of an investigation completed on November 23, 2020[, i]t was determined that [Mr. Kirtpatrick] did on several occasions sexually harass [inmate] Newton Henley …. There [are] written and verbal statements made that corroborate the allegation. As a result of these actions, [Mr. Kirtpatrick] has violated NMCD policy CD-090100 Inmate Discipline.

(*Id.*) As part of its investigation into this charge, prison officials collected statements from other inmates. (*See* Doc. 7 at 2; Doc. 7-1 at 323-25.) According to one such statement, Mr. Kirtpatrick touched Mr. Henley "on the left breast and put a finger in [his] butt crack." (*Id.* at 324.) According to another statement, Mr. Kirtpatrick told Mr. Henley that he wanted Mr. Henley "to be his woman and in exchange he would buy [Mr. Henley] commissary and help him financially." (*Id.* at 323.)

On November 25, 2020, a "Major Level" hearing on the sexual harassment charge was set for November 30, 2020.[2] (Doc. 7-1 at 76.) At the November 30 hearing, Disciplinary Hearing Officer J. Sarracino ("DHO") asked Mr. Kirtpatrick whether he needed an interpreter, and Mr. Kirtpatrick responded that he "had a medical condition as far as memory" and "need[ed] somebody in [his] defense." (Doc. 8, Nov. 30 Disc. Hrg. Rec. at 00:41 to 01:15.) After Mr. Kirtpatrick told the DHO that he could speak English, the DHO stated, "So you don't need an interpreter." (*Id.* at 01:15 to 01:29.) Mr. Kirtpatrick then submitted questions for witnesses he wished to call in his defense. (*Id.* at 01:31 to 02:44.) The DHO told Mr. Kirtpatrick that he should have submitted these questions beforehand. (*Id.* at 02:44 to 02:52.) Mr. Kirtpatrick indicated that he needed an extension, and the DHO continued the hearing to December 9, 2020. (*Id.*; Doc. 7-1 at 74.)

---

[2] Although Respondent has submitted documents indicating that Mr. Kirtpatrick received notice of the November 30, 2020 hearing on November 25, 2020, (Doc. 7-1 at 75-76), in his Reply, Mr. Kirtpatrick contests that he received notice within 24 hours of the hearing. (Doc. 9 at 2.) But as explained in Section III.A.3.b., *infra*, Mr. Kirtpatrick fails to state a due process claim based on the timeliness of the notice he received regardless of when he was notified of the November 30 hearing, because the hearing was continued to December 9, 2020.

At the December 9 hearing, Mr. Kirtpatrick again asked the DHO if he could "get a representative." (Doc. 8, Dec. 9 Disc. Hrg. Rec. at 1:16 to 1:23.) The DHO denied his request. (*Id.*) The DHO then rejected the witness questions Mr. Kirtpatrick had submitted for the hearing on the grounds that they "weren't valid to the incident itself." (*Id.* at 01:59 to 02:46.[3]) The questions, which were addressed to 13 witnesses, concerned Mr. Kirtpatrick's character and general habits as well as the credibility of his accusers, and did not solicit direct evidence regarding whether Mr. Kirtpatrick engaged in the conduct underlying the sexual harassment charge. (Doc. 7-1 at 77-92.)

After the DHO told Mr. Kirtpatrick that she would not call his witnesses, he denied the sexual harassment charge against him and read a six-page, handwritten statement into the record. (Doc. 8, Dec. 9 Disc. Hrg. Rec. at 02:48 to 17:00; *see also* Doc. 7-1 at 93-98.) In the statement, Mr. Kirtpatrick indicated that he had only a passing acquaintance with Mr. Henley and that the accusations levied against him were lies meant to get him removed from his housing unit. (Doc. 8, Dec. 9 Disc. Hrg. Rec. at 02:48 to 17:00; *see* Doc. 7-1 at 93-98.) On December 11, 2020, the DHO found Mr. Kirtpatrick guilty of sexual harassment and sanctioned him with the loss of 180 days of earned good time as well as 30 days in a restrictive housing unit. (Doc. 7-1 at 69.)

Mr. Kirtpatrick appealed the DHO's decision through the NMCD's internal appeals process, arguing that prison officials violated his due process rights and prison policy by: (1) failing to give him 24 hours' notice before his disciplinary hearing; (2) prohibiting him from calling witnesses and presenting evidence; (3) issuing a notice that was too vague to allow him to mount a defense to the charge against him; (4) not providing him with a representative to help him with his defense; (5) not having an impartial decisionmaker adjudicate the charge; and, (6) making a

---

[3] Handwritten notations indicating that "[q]uestions have to be specific to the incident" appear on each set of witness questions in the record. (Doc. 7-1 at 77-92.)

finding of guilt unsupported by evidence. (Doc. 7-1 at 36-37; Doc. 7-2 at 52-74.) The NMCD Director of Adult Prisons upheld the DHO's finding of guilt but reduced Mr. Kirtpatrick's loss-of-good-time sanction to 30 days. (Doc. 7-1 at 11.)

On January 27, 2021, Mr. Kirtpatrick filed a *pro se* petition for writ of habeas corpus in state district court, followed by an amended petition submitted through counsel. (Doc. 7-1 at 1-5, 137-44.) In the amended petition, Mr. Kirtpatrick claimed that prison officials violated his due process rights under the United States and New Mexico Constitutions because: (1) the written notice of the charge did not adequately explain the allegations against him; (2) the DHO wrongfully rejected his witness questions; (3) the DHO improperly refused to provide him with a representative to aid in his defense; and, (4) there was not enough evidence to support a finding of guilt. (*Id.* at 142-44.) The state district court dismissed the petition on October 14, 2022, reasoning that: (1) Mr. Kirtpatrick was not entitled to a representative to assist him because, at the hearing, he "expresse[d] himself intelligibly," "demonstrate[d] knowledge of the basis for the charge against him," was "an articulate spokesman on his own behalf and repeatedly denie[d] the substance of the charge," and appeared "capable of collecting and presenting evidence effectively on his own behalf"; (2) the DHO excluded Mr. Kirtpatrick's witnesses for good cause, *i.e.*, because the questions he submitted sought "information that tends not to prove or disprove directly the allegation of sexual harassment"[4]; (3) substantial evidence supported the DHO's decision; and, (4)

---

[4] The court did not explicitly state that good cause supported the DHO's exclusion of Mr. Kirtpatrick's witnesses, but this finding is clearly implied. (*See* Doc. 7-1 at 269-70.) Specifically, the court: (1) interpreted NMCD procedures to allow the exclusion of witnesses for good cause; (2) observed that "[t]he record … includes manuscript notations documenting [the DHO's] reasons for not permitting witnesses … to the effect that [the questions Mr. Kirtpatrick submitted sought] information that tends not to prove or disprove directly the allegation of sexual harassment"; and, (3) found that the DHO followed NMCD procedures. (*Id.* at 270.)

4

the disciplinary proceedings comported with prison regulations and due process. (*Id.* at 267, 269-70.)

On November 4, 2022, Mr. Kirtpatrick filed a petition for a writ of certiorari with the New Mexico Supreme Court, arguing that: (1) he was wrongly denied the opportunity to call witnesses or have his witness questions asked; (2) his misconduct report was wrongly served on him "the day before [his] hearing"; and, (3) there were procedural defects in the state district court's dismissal of his habeas petition. (*Id.* at 273-76.) His petition further contended that the state district court failed to account for his alleged disabilities, presumably to contest the court's assessment that he was not entitled to a representative at the challenged proceedings. (*Id.*) On January 25, 2023, the New Mexico Supreme Court denied the petition for a writ of certiorari. (*Id.* at 311.)

Mr. Kirtpatrick filed his Petition in this Court on December 13, 2022. (Doc. 1.) In addition, he filed a supplement to the Petition (Doc. 2) ("Supplement") on January 13, 2023. In these filings, Mr. Kirtpatrick asserts that NMCD officials violated his Fifth and Fourteenth Amendment rights, his rights under Article II, § 18 of the New Mexico Constitution, and NMCD policy by barring him from calling witnesses and presenting evidence at the disciplinary proceedings against him and denying him a representative to assist in his defense. (Doc. 1 at 3; Doc. 2 at 2.)

On May 4, 2024, Respondent filed an Answer addressing the merits of the Petition, in which he asks the Court to dismiss Mr. Kirtpatrick's claims with prejudice and deny a certificate of appealability. (Doc. 7 at 1.)

Mr. Kirtpatrick filed a Reply in support of his Petition on May 23, 2023. (Doc. 9.) In it, he raises three claims not raised in the Petition or Supplement, namely that: (1) the written notice of the charge did not adequately explain the allegations against him; (2) he did not receive 24 hours'

5

notice before the November 30 hearing; and, (3) prison officials wrongly excluded Corrections Officers Vigil and Mackey from the proceedings. (Doc. 9 at 1-2.)

## II. LEGAL STANDARDS

A petitioner is entitled to habeas corpus relief under 28 U.S.C. § 2241 if he demonstrates that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). "The fundamental purpose of a § 2241 habeas proceeding is to allow a person in custody to attack the legality of that custody, and the traditional function of the writ is to secure release from illegal custody." *Palma-Salazar v. Davis*, 677 F.3d 1031, 1035 (10th Cir. 2012) (quotation marks omitted). A state petitioner properly brings his claims under 28 U.S.C. § 2241 when he challenges the execution of his sentence. *See McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997) ("Petitions under § 2241 are used to attack the execution of a sentence, in contrast to § 2254 habeas and § 2255 proceedings, which are used to collaterally attack the validity of a conviction and sentence.") (citation omitted).

### A. Exhaustion

"A habeas petitioner is generally required to exhaust state remedies whether his action is brought under § 2241 or § 2254." *Montez v. McKinna*, 208 F.3d 862, 866 (10th Cir. 2000). "The exhaustion requirement is not jurisdictional, however, and may be waived by the state or avoided by the petitioner if an attempt to exhaust would be futile." *Clayton v. Gibson*, 199 F.3d 1162, 1170 (10th Cir. 1999), *holding modified by McGregor v. Gibson*, 248 F.3d 946 (10th Cir. 2001). Because Respondent has not raised the issue of exhaustion in his Answer, (*see generally* Doc. 7), he has waived any argument on this point. *Smith v. Oliver*, 615 F. App'x 905, 907 n.3 (10th Cir. 2015).[5]

---

[5] In the Tenth Circuit, unpublished decisions are not binding precedent but may be cited for their persuasive value. *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005).

### B. Standard of Review

The Tenth Circuit has not clearly established the standard of review a federal court should apply to a state court's determination of federal constitutional issues raised in a § 2241 petition. In *Henderson v. Scott*, 260 F.3d 1213, 1215 (10th Cir. 2001), the Tenth Circuit "accord[ed] deference to [a state court's] determination of … federal constitutional issue[s]" akin to the deference given in § 2254 cases.[6] Several years later, without mentioning *Henderson*, a Tenth Circuit panel held that "the deference normally accorded state court judgments under § 2254 does not apply" and that courts "review habeas claims made pursuant to § 2241 … de novo." *Walck v. Edmondson*, 472 F.3d 1227, 1235 (10th Cir. 2007). However, the *Walck* decision did not identify an intervening Supreme Court decision regarding the applicable standard of review, nor did the Tenth Circuit decide *Walck en banc*. *See generally id.* Thus, the *Walck* panel lacked the power to overrule *Henderson* regarding the correct standard of review for § 2241 habeas petition cases. *See Berry v. Stevinson Chevrolet*, 74 F.3d 980, 985 (10th Cir. 1996) (holding that "[a]bsent an intervening

---

[6] *Henderson* did not cite any authority that directly supports this proposition. *See Henderson*, 260 F.3d at 1215. Rather, the *Henderson* court cited to 28 U.S.C. § 2254(e)(1), which requires federal courts to defer to state court factual findings in § 2254 cases, and *Williams v. Taylor*, 529 U.S. 362 (2000), which, in the context of explaining the law governing § 2254 petitions, states that "§ 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Williams*, 529 U.S. at 412; *Henderson*, 260 F.3d at 1215. In pertinent part, § 2254(d) provides as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim … resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]

28 U.S.C. § 2254(d). *Henderson* also relied on the *Montez* holding that the requirement for state prisoners to obtain a certificate of appealability before pursuing a § 2254 appeal also applies to state prisoners filing § 2241 appeals. *Montez*, 208 F.3d at 869. The *Montez* court explained that the burden thus imposed on state prisoners "is consistent with notions of comity and deference to state adjudicatory procedures embodied throughout the [Antiterrorism and Effective Death Penalty Act] and gives effect to the disparate language employed by Congress in" the statutes governing certificates of appealability for federal and state prisoners. *Id.*

Supreme Court or en banc decision … [the Tenth Circuit] lack[s] the power to overrule" its prior decisions).

Since *Walck*, the Tenth Circuit has applied a deferential standard of review to state courts' determination of constitutional issues in at least two unpublished opinions. *See Brown v. Ulibarri*, 298 F. App'x 746, 748–49 (10th Cir. 2008) (citing § 2254(d)); *Gilkey v. Kansas Parole Bd.*, 318 F. App'x 620, 621 (10th Cir. 2008) (citing *Henderson*). Nevertheless, in *Leatherwood v. Allbaugh*, 861 F.3d 1034, 1042–43 (10th Cir. 2017), a Tenth Circuit panel reaffirmed the *Walck* holding that *de novo* review applies to § 2241 petitions, and several district courts in the Tenth Circuit have cited *Walck* and *Leatherwood* for this proposition. *See, e.g., Franklin v. Stephenson*, 2022 WL 6103342, at *2 n.2 (D.N.M. Oct. 7, 2022) (collecting cases).[7] Given the unsettled state of the law and my conclusion that Mr. Kirtpatrick's claims would fail under either standard, I review the state court's determination of federal constitutional issues using the more demanding *de novo* standard of review.[8]

### C. Liberal Construction of *Pro Se* Petitions

Because Mr. Kirtpatrick is a *pro se* litigant, I construe his filings liberally and hold them to a less stringent standard than I would apply to the filings of a party represented by counsel. *See*

---

[7] *Franklin* cites *Walck* and *Leatherwood* while also providing additional reasons why § 2254(d) does not apply to an inmate petition challenging the loss of good time credit. *See Franklin*, 2022 WL 6103342, at *3. In *Franklin*, the court observed that § 2254(d) only applies to a "petitioner who is 'in custody pursuant to the judgment of a State court' and who raises a claim 'that was adjudicated on the merits in State court proceedings.'" *Id.* (brackets omitted) (quoting 28 U.S.C. § 2254(d)). The court thus reasoned that, because an inmate's loss of good time credit is "effectuated by … prison authorities[] and not a state court judge," the language of § 2254(d) does not apply to petitions challenging the loss of good time credit. *Id.*

[8] *Walck* also raises the question of whether a federal court reviewing a § 2241 petition should accord deference to a state court's factual findings under § 2254(e)(1). *See Walck*, 472 F.3d at 1235 ("Section 2241's applicability greatly affects our standard of review in that the deference normally accorded state court judgments under § 2254 does not apply."); *but see Ellis v. Province*, 316 F. App'x 705, 706 (10th Cir. 2008) (applying § 2254(e)(1) to a § 2241 petition). Because the Court can dispose of Mr. Kirtpatrick's Petition without deferring to the state court's factual findings, I do not address that standard-of-review issue here.

*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Liberal construction requires courts to make some allowance for a *pro se* litigant's "failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements[.]" *Garrett v. Selby Connor Maddox & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). However, "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Id.*

### III. ANALYSIS

**A. Federal Due Process Claims**

In his Petition and Supplement, Mr. Kirtpatrick challenges the disciplinary proceedings that deprived him of 30 days' good time credit on both Fifth and Fourteenth Amendment due process grounds. (Doc. 1 at 3; Doc. 2 at 3.) "The Due Process Clause of the Fifth Amendment applies only to action by the federal government while the Due Process Clause of the Fourteen Amendment applies to actions by state governments." *Koessel v. Sublette Cnty. Sheriff's Dep't*, 717 F.3d 736, 748 n.2 (10th Cir. 2013). Here, Mr. Kirtpatrick challenges the conduct of officers and employees of the NMCD, a state government department. (Docs. 1, 2, 9.) Thus, the Due Process Clause of the Fifth Amendment does not apply, and I analyze Mr. Kirtpatrick's due process claims under the Fourteenth Amendment.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). However, "[i]t is well settled that an inmate's liberty interest in his earned good time credits cannot be denied without the minimal safeguards afforded by the Due Process Clause of the Fourteenth Amendment." *Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 811 (10th Cir. 2007) (quotation marks omitted). In broad terms, these safeguards include

> (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

*Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 563-67). Further, an inmate who is illiterate, or who is unable to collect and present evidence in his defense due to the complexity of the charge against him, is entitled to have a representative to assist him with his defense. *Wolff*, 418 U.S. at 570.

    1. <u>Right to Call Witnesses</u>

Mr. Kirtpatrick first argues that the DHO violated his due process rights by refusing to call his witnesses at the disciplinary proceedings against him. (Doc. 1 at 3.) "Chief among the due process minima outlined in *Wolff* [is] the right of an inmate to call and present witnesses and documentary evidence in his defense before the disciplinary board." *Ponte v. Real*, 471 U.S. 491, 495 (1985). But this right is not absolute. *Howard*, 487 F.3d at 812. Rather, it is "circumscribed by the necessary 'mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application.'" *Baxter v. Palmigiano*, 425 U.S. 308, 321 (1976) (quoting *Wolff*, 418 U.S. at 556). In other words, an inmate's right to call witnesses in a disciplinary hearing is "subject to restrictions imposed by the nature of the regime to which [he has] been lawfully committed." *Wolff*, 418 U.S. at 556.

Accordingly, "[t]he scope of a prisoner's right to call and confront witnesses is committed to the sound discretion of prison officials." *Ramer v. Kerby*, 936 F.2d 1102, 1104 (10th Cir. 1991). This discretion allows prison officials to refuse to call a witness due to "irrelevance, lack of necessity, or the hazards presented in individual cases." *Wolff*, 418 U.S. at 566; *see also Ramer*, 936 F.2d at 1104 (holding that inmate's request to call staff members as witnesses at disciplinary

hearing can be denied if prison officials determine that "staff members' testimony would be irrelevant, cumulative, or otherwise unnecessary for the committee to come to a fair resolution of the matter"). However, "[t]he decision whether to grant a request to call or confront a particular witness … must be made on an individualized basis." *Ramer*, 936 F.2d at 1105. A "blanket policy excluding the testimony of a certain class of individuals does not satisfy" the due process requirements "established by the Supreme Court in *Wolff*." *Id.*

In Mr. Kirtpatrick's case, the DHO excluded his witnesses because the questions he proposed to ask them were not "specific to the incident" underlying the sexual harassment charge against him. (Doc. 7-1 at 77-92.) The DHO acted within her sound discretion when she excluded this evidence. Her notations that the proposed questions were not "specific to the incident" (1) fairly and reasonably characterize the questions and (2) are consistent with a determination that the testimony Mr. Kirtpatrick sought to elicit was irrelevant or unnecessary to a just resolution of the charge. *See Wolff*, 418 U.S. at 566; *Ramer*, 936 F.2d at 1104-05. Moreover, the DHO excluded each of Mr. Kirtpatrick's witnesses based on the questions he intended to ask the witness and did not apply a blanket policy barring a class of witnesses. (Doc. 7-1 at 77-92.) In other words, the DHO complied with the due process requirement to decide requests to call witnesses on an individualized basis. *See Ramer*, 936 F.2d at 1104-05. The Court should therefore deny Mr. Kirtpatrick's due process claim challenging the DHO's exclusion of his witnesses.

2. Right to a Representative

Mr. Kirtpatrick next claims that he was wrongfully denied a representative to assist him at the disciplinary proceedings against him. (Doc. 2 at 2.) In general, "inmates [do not] have a right to either retained or appointed counsel in disciplinary proceedings." *Wolff*, 418 U.S. at 570.

However, in special circumstances, due process may require that an inmate be provided with a representative to assist in his defense against a disciplinary charge. Thus,

> [w]here an illiterate inmate is involved … or [where] the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or if that is forbidden, to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff.

*Id.*

The Tenth Circuit has used a straightforward approach to assess claims that prison officials violated an inmate's right to a representative at a disciplinary proceeding, simply looking to whether the inmate was illiterate and whether the challenged proceeding appeared to involve a complex issue. For instance, in *Abdulhaseeb v. Ward*, 173 F. App'x 658, 661 (10th Cir. 2006), the Tenth Circuit upheld the dismissal of an inmate's due process claim challenging prison officials' failure to provide him with a representative because there was "no indication that [the inmate was] illiterate," and the charge against him, *i.e.*, that he used a law library typewriter for personal reasons, was not complex. *See also Jordan v. Wiley*, 411 F. App'x 201, 209 (10th Cir. 2011) (upholding determination that due process did not require prison officials to provide inmate with staff representative because he was not illiterate, and charge against him, *i.e.*, that he threatened a corrections officer, was not complex).

In determining whether an inmate is illiterate for the purposes of resolving an inmate's denial-of-representative claim, some district courts in the Tenth Circuit have looked to whether the inmate alleged illiteracy in his petition, or whether there is record evidence of illiteracy. *See Harring v. Catalyst Ivanhoe Behav. Servs.*, 2011 WL 3418249, at *5 (W.D. Okla. June 28, 2011), *report and recommendation adopted*, 2011 WL 3418232 (W.D. Okla. Aug. 4, 2011) (dismissing

petitioner's denial-of-representative claim where petitioner did "not allege[] illiteracy"); *Moore v. Higgins*, 2005 WL 1950339, at *2 n.5 (W.D. Okla. July 20, 2005), *report and recommendation adopted*, 2005 WL 2415954 (W.D. Okla. Aug. 11, 2005) (finding that petitioner was not entitled to a staff representative where there was "no evidence" that petitioner was illiterate); *cf. Hernandez v. Soares*, 2006 WL 2050990, at *6 (D. Colo. July 20, 2006) (granting defendant summary judgment on plaintiff's Sixth Amendment claim challenging denial of inmate representative at classification hearing where plaintiff did "not allege that he is illiterate"). Other district courts, including one in the Tenth Circuit, have found that inmates were literate by looking to documents in the record that the inmates drafted. *See Crosby v. Fox*, 2017 WL 6442139, at *4 (D. Colo. Dec. 18, 2017), *aff'd*, 715 F. App'x 870 (10th Cir. 2018) ("Applicant clearly is not illiterate as he has presented coherent arguments in the Application and related court filings."); *Beard v. Kimble*, 2015 WL 4662694, at *11 (E.D. Cal. Aug. 5, 2015) ("Plaintiff's [complaint] is hand written, summarizes the content of [his misconduct report], and displays significant legal research. It is clear that plaintiff is literate.")

Here, Mr. Kirtpatrick has not alleged or presented evidence that he is illiterate. (*See* Docs. 1, 2, 9.) Further, the handwritten filings he has submitted in his state and federal habeas proceedings affirmatively demonstrate that he is literate. (*See, e.g.*, Doc. 2; Doc. 7-1 at 13-20.) Thus, Mr. Kirtpatrick was not entitled to have a representative assist him at disciplinary proceedings on the basis of illiteracy. *Wolff*, 418 U.S. at 570.

Moreover, the charge that Mr. Kirtpatrick sexually harassed Mr. Henley is no more complex than other charges the Tenth Circuit has deemed insufficiently complex to support a denial-of-representative claim. *See Abdulhaseeb*, 173 F. App'x at 660-61, *Jordan*, 411 F. App'x at 204, 209. Thus, under the criteria set out in *Wolff*, due process did not require prison officials to

13

provide Mr. Kirtpatrick with a representative to assist him at the disciplinary proceedings at issue. *Wolff*, 418 U.S. at 570.

In his Supplement, Mr. Kirtpatrick suggests that he was entitled to a staff representative to assist him because he has medical limitations due to a stroke he suffered in 2013 and a traumatic brain injury he suffered in 2015. (Doc. 2 at 1-2.) These alleged limitations include "problems with understanding, comprehension, and memory," hearing problems that require "the use of two hearing aids," and physical limitations that require the use of a walker. (*Id.* at 1.) He also states that he "had a full[-]time aid[e] at the time of the disciplinary report."[9] (*Id.* at 2.)

However, the bare existence of limitations is not dispositive of whether an inmate was entitled to a representative at a disciplinary hearing. Rather, courts must look to whether the limitations impeded the inmate's ability to "collect and present the evidence necessary for an adequate comprehension of the case." *Wolff*, 418 U.S. at 570; *see also Flagg v. Warden*, 2021 WL 4066678, at *3 (S.D. Ind. Sept. 7, 2021) ("Though [the petitioner] argues that he has a diagnosis of a traumatic brain injury, the [c]ourt does not find that this injury impeded [his] ability to marshal his defense. [The petitioner] has demonstrated that he can coherently present arguments in his appeals, in his written statement presented at the hearing, and in his subsequent filings with the Court in this habeas action.").

Here, Mr. Kirtpatrick has repeatedly demonstrated the ability to marshal his defense. (*See, e.g.,* Doc. 2; Doc. 7-1 at 13-20, 77-98; Doc. 9.) Thus, manifestly, his mental and physical limitations were not so severe that they prevented him from mounting a defense or addressing the

---

[9] Mr. Kirtpatrick further asserts that he was exempt from participating in prison programming "for both mental and medical reasons," (Doc. 2 at 1), and submits two documents in support of that assertion. (Doc. 2 at 4, 5.) But neither document details the mental or physical limitations that caused prison officials to allegedly grant these exemptions. (*See id.*)

charge against him without assistance. For these reasons, the Court should deny Mr. Kirtpatrick's due process claim challenging the NMCD's refusal to provide him with a representative at the disciplinary proceedings against him.

3. Arguments Raised in Reply Brief

In his Reply, Mr. Kirtpatrick asserts that NMCD officials violated his due process rights for three reasons not raised in his Petition or Supplement. (*Compare* Docs. 1, 2 *with* Doc. 9 at 1-3.) "[A]rguments raised for the first time in a reply brief are generally deemed waived." *United States v. Harrell*, 642 F.3d 907, 918 (10th Cir. 2011); *see also United States v. Moya-Breton*, 439 F. App'x 711, 715 (10th Cir. 2011) (applying the rule in the context of a habeas petition appeal); *United States v. Myers*, 2016 WL 4479489, at *6 (N.D. Okla. Aug. 24, 2016) (applying the rule to a habeas petitioner's reply brief in federal district court); *La Flora v. United States*, 2007 WL 1347694, at *1 (D. Kan. May 8, 2007) (same). Thus, Mr. Kirtpatrick has waived any arguments not raised in the Petition or Supplement. Moreover, for the reasons explained below, the arguments he raises for the first time in his Reply have no merit.

    a. *Adequacy of Notice*

In the misconduct report Mr. Kirtpatrick received before his disciplinary hearings, the explanation of the charge states that he "did on several occasions sexually harass Newton Henley[.]" (Doc. 7-1 at 322.) In his Reply, Mr. Kirtpatrick argues that he was unable to gather evidence specific to the charged conduct because the report's use of the phrase "on several occasions" is impermissibly vague. (Doc. 9 at 2.)

*Wolff* requires that prison officials give an inmate advance written notice of an impending disciplinary hearing so that the inmate can "marshal the facts in his defense" and "clarify what the charges are." *Wolff*, 418 U.S. at 564. A notice that sets forth "the offense codes charged" and

15

provides "a brief description of the charged conduct" gives an inmate "sufficient notice to allow him to defend against" disciplinary charges. *Brown v. Wyoming Dep't of Corr. State Penitentiary Warden*, 234 F. App'x 874, 878 (10th Cir. 2007). Here, prison officials provided Mr. Kirtpatrick with written notice that briefly described the allegations against him and specified the date,[10] time, location, and offense code of the alleged conduct underlying the charge. (*See* Doc. 7-1 at 322.) He therefore received adequate notice of the disciplinary charge against him. *Brown*, 234 F. App'x at 878.

      b. *Timeliness of Notice*

Mr. Kirtpatrick also asserts in his Reply that he "did not receive written notice at least 24 hours before the disciplinary [h]earing." (Doc. 9 at 2.) But this argument is plainly without merit.

> *Wolff* set a minimum time for [prison officials to give] … advance written notice[ of a disciplinary hearing]: 'At least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before' a hearing determining whether to revoke good-time credit.

*Brennan v. United States*, 646 F. App'x 662, 666 (10th Cir. 2016) (quoting *Wolff*, 418 U.S. at 564). As discussed in Section I., *supra*, Mr. Kirtpatrick's disciplinary hearing was originally scheduled for November 30, 2020, but was continued to December 9, 2020. (Doc. 7-1 at 74; Doc. 9 at 2.) Thus, regardless of how far in advance Mr. Kirtpatrick received notice of the November 30 hearing, he plainly had more than 24 hours' notice of the December 9 hearing and had constitutionally adequate time in which to prepare his defense. *Wolff*, 418 U.S. at 564.

---

[10] The misconduct report gives the incident date as November 2, 2020, (Doc. 7-1 at 322), while one of the inmate statements presented at the disciplinary proceedings gives the incident date as November 1, 2020. (Doc. 7-1 at 323.) However, this discrepancy is too minor to vitiate the adequacy of the notice Mr. Kirtpatrick received, particularly when neither his witness questions nor his personal statement challenged the charge based on the date on which the underlying incident allegedly occurred. (*See* Doc. 7-1 at 77-98.)

### c. *Exclusion of Officers Vigil and Mackey*

Finally, in his Reply, Mr. Kirtpatrick claims that prison officials wrongfully excluded Corrections Officers Vigil and Mackey from the disciplinary proceedings against him. (Doc. 9 at 1-2.) The gist of this claim is that, had the officers been allowed to participate in the proceedings, they would have "cleared" Mr. Kirtpatrick of the charge against him. (*Id.*) Although Mr. Kirtpatrick does not clearly identify the wrongful acts that led to these officers' exclusion, he appears to suggest that prison officials should have allowed him to speak to the officers before the hearing and should have informed the officers about the hearing, but did not do so. (*See id.* at 1 ("Petitioner's request to have both c/o Mackey and c/o Vigil … to come down to the cage [where Mr. Kirtpatrick was housed] went on deaf ears by the DHO."); *id.* at 2 ("Mr. Vigil told [Mr. Kirtpatrick] that he was never notified by the DHO of any hearing[.]"), ("C/o Mackey … to[o] was never notified by the DHO of any Major hearing for [Mr. Kirtpatrick].").)

To the extent that Mr. Kirtpatrick's Reply can be construed as arguing that prison officials should have allowed him to call Officers Vigil and Mackey as witnesses, that argument fails for the reasons stated in Section II.A.1., above, *i.e.*, that the DHO allowed Mr. Kirtpatrick to submit questions for witnesses but properly rejected those questions.[11] Notably, Mr. Kirtpatrick's proposed questions for Officers Vigil and Mackey were among those the DHO considered and

---

[11] Mr. Kirtpatrick contends that Officer Mackey could have provided testimony that speaks directly to whether Mr. Kirtpatrick engaged in the charged misconduct. (*See* Doc. 9 at 2 ("C/o Mackey would have clearly stated he was on duty in pod E and that he saw me in my cell all day alone and that Newton Henley never reported to him any problems or concerns with me.").) He therefore contends that the DHO's rationale for rejecting his witness questions, *i.e.*, that they were not specific to the incident underlying the charge, did not apply to Officer Mackey. However, the questions Mr. Kirtpatrick submitted for Officer Mackey did not seek to elicit the testimony he now claims the officer would have provided. (*See* Doc. 7-1 at 91.) Further, no one has alleged that Officer Mackey would necessarily have witnessed the underlying incident if it occurred, and thus, Mr. Kirtpatrick's proposed questions about whether Officer Mackey "ever" saw Mr. Kirtpatrick in a cell, at a table, or standing alone with Mr. Henley are not specific to the charged misconduct. (*Id.*)

rejected. (Doc. 7-1 at 86, 91.) Further, *Wolff* does not require prison officials to allow an inmate to speak to corrections officers about a disciplinary charge or inform the officers of an impending disciplinary hearing. *See generally Wolff*, 418 U.S. at 539. Thus, NMCD officials did not violate due process by failing or refusing to take those actions in Mr. Kirtpatrick's case. In sum, the exclusion of Officers Vigil and Mackey from Mr. Kirtpatrick's disciplinary proceedings did not violate due process.

### B. Claims Based on State Law and NMCD Policy

In addition to claiming violations of the Fifth and Fourteenth Amendments to the United States Constitution, Mr. Kirtpatrick claims that prison officials violated his rights under Article II, § 18 of the New Mexico Constitution and NMCD policy. (Doc. 1 at 6; Doc. 2 at 2-3.) But in relevant part, Section 2241 provides that a "writ of habeas corpus shall not extend to a prisoner unless … [h]e is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). Thus, Mr. Kirtpatrick's claims against prison officials for violating his rights under the New Mexico Constitution "are not cognizable in a federal habeas action." *Montez*, 208 F.3d at 865. Likewise, "a § 2241 habeas petition is not the proper mechanism" for a claim that "prison officials violated … prison policy." *Ali v. Franklin*, 554 F. App'x 702, 704 (10th Cir. 2014) (citing 28 U.S.C. § 2241(c)(3)). Accordingly, the Court should deny Mr. Kirtpatrick's claims based on alleged violations of the state constitution and prison policy.

### C. Certificate of Appealability

No appeal may be taken from a "final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court" unless a petitioner first obtains a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A); *see Montez*, 208 F.3d at 869 (holding that § 2253(c)(1)(A) applies to state prisoners proceeding under § 2241). For the Court

to issue a certificate of appealability, Mr. Kirtpatrick must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons stated above, Mr. Kirtpatrick has failed to satisfy that standard. The Court should therefore deny a certificate of appealability.

### IV. CONCLUSION

For the foregoing reasons, I recommend that the Court DENY Mr. Kirtpatrick's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 (Doc. 1) and DISMISS this case with prejudice. I further recommend that the Court DENY a certificate of appealability.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**